Thank you, Your Honor. May it please the Court, my name is Jason Owens. I represent Washington County, Arkansas in this action. At the outset, I think it's important for me to say that there appears to be no actual right to privacy and informational disclosures. Although the case cited to Waylon, Rowe, and others, Nassau v. Nelson, the 2011 Supreme Court case, made it clear that the Supreme Court has not decided to question whether a right exists. Justice Breyer Excuse me, Counsel, wouldn't it be more accurate to say that the right might be in dispute, but that there certainly has been Eighth Circuit language to the effect recognizing the existence of informational privacy? And in addition, perhaps dicta, but perhaps other discussion language in Supreme Court cases mentioning the right, that certainly there are concurring views on the Supreme Court to its cases that say there is no right, and perhaps that right may not be clearly established, which I think is going to be the principal fighting point for this case. But to simply declare that it simply does not exist either under Eighth or Supreme Court precedent I think might be a bit much. Justice Breyer Well, and here's why I say that, Your Honor. First of all, there's certainly no textual right to privacy and informational disclosure in the Constitution. Justice Sotomayor Wait a minute. More basically, don't we have to assume the right? Don't we violate Supreme Court mandate unless we assume the right exists? Justice Breyer I don't believe so, Your Honor. Justice Scalia said don't stop assuming, and they rejected that. How can we do what a concurring or dissenting justice failed to do? Justice Scalia said there is, point blank, there is no right. And he lost. He didn't prevail with that view. I'm not saying there is a right. I'm not saying our Court has properly construed Whalen, but I don't see that we can do anything other than do what they've consistently done, which is assume the right. Justice Breyer Well, except that the majority in NASA, in footnotes 9 and 10, very long footnotes in the opinion, directly addressed this point and said that they would not decide whether there was a right or not. Justice Breyer Well, isn't that different than saying that it's not there? Perhaps it's not clearly established. Perhaps it hasn't been definitively stated by the Supreme Court, but that's not the same as saying it cannot exist. Justice Breyer I think it is with respect to a nontextual right. Breyer Well, wait a minute. How can that possibly be true? When they say we are not going to reach the question and we're not going to decide, and we have precedent that says that the right may exist, how does that become a direct mandate to us to find that the right is non-extant? Justice Breyer Well, these officials in the field are tasked with finding the right and they're tasked with deciding whether their conduct violates the right at the time. Justice Breyer And isn't that all about whether or not the right is clearly established and not about whether or not it exists? And aren't we really in a position where you presume the right exists and then move forward to the question of has it been clearly established? Justice Breyer Well, the first problem with the Qualified Immunity Test, as enunciated in Pearson and a number of cases before that and even since, is whether there was a violation of a right. If there's no right, there can't be a violation. Justice Sotomayor Pearson says that's not first. It's one of two. Justice Breyer Well, it says they can be taken in either order. That's correct, Your Honor. Justice Sotomayor Well, let's get it right. Justice Breyer Well, I think it is right to say that it can be taken in either order. Certainly, if there is no right, there can be no violation. There is no right in the Constitution. The Supreme Court has never declared a right. And so our position is that the right cannot be violated because there has never been declared a right by the Supreme  Justice Breyer So, Counsel, isn't that threshold question really whether the Supreme Court in Wayland and Nixon actually established a right to informational privacy that's binding on this circuit? Justice Breyer Well, it would be if NASA hadn't said the opposite, Your Honor. NASA says that they didn't do that. Elsewhere, they have a discussion about whether there's a right at all in NASA. They certainly engage in that discussion both in the concurring opinions and in this extended footnote and even the text discussion. Justice Breyer Well, that's really my question is whether taking all that precedent together, what binding precedent exists as far as the right to informational privacy that binds this circuit? Justice Breyer I don't think there is any binding precedent that establishes a right to informational privacy or there have been a couple of other phrasings of that right. And so I don't think... Justice Sotomayor Why don't you turn to the issue that the court is waiting to hear about? Justice Breyer Yes, Your Honor. The second question, of course, is whether the right, assuming it exists, is clearly established. This court has referred to this assumed right or the notion as it's called it in some of its cases as unclear, murky, obscure. The cases that this circuit and the Supreme Court have decided have uniformly held that even this assumed right has never been violated. Justice Kagan Is that required in order for it to be clearly established? In other words, could you have a clearly established right but just has not, the courts have not found it's been violated yet? Justice Breyer Well, what's required is that there be reasonable notice to the public officials who are engaging in the conduct that's challenged. That reasonable notice requires that the question be beyond debate. It's certainly our position that without any opinions finding a violation, that the question is far from beyond debate. Justice Kagan What would, in your mind, qualify, assuming there is a right, what would the ultimate nature of a personal life, what would qualify if not this one? Justice Breyer Well, so, I think that even where a court found that it did, and it's the only circuit court of appeals case that the appellees cited, Block v. Rybar in the previous disclosure of the detailed facts of a rape did violate this right in the Sixth Circuit. Now, the Eighth Circuit's opinion and De La Rosa and others have said that what's required is in-circuit authority or a robust consensus of cases. But the Sixth Justice Sotomayor Counsel, in addition to Eagle v. Morgan, which sets forth a very clear description of the right, I find at least six cases from circuit courts, the most important, that have all found violations of this right, several of them in context very similar to this case. Justice Breyer Well, I don't believe any were cited in the briefings or a district court opinion. Justice Sotomayor No, it's not cited, but they exist. Justice Breyer Well, additionally, I don't think any were cited. I certainly haven't found any where you're dealing with this compulsory disclosure situation like we have with the Freedom of Information Act, which brings about these public interests. Of course, the Supreme Court and these courts of appeals that have analyzed this have said that weighing is required. There is a pronounced public interest in government transparency, not to mention in outing sex offenders. Sex offenders crave privacy and secrecy. And so any ruling that would say that sex offenses must somehow be private or secret Justice Breyer The privacy is not of the sex offense or anything related to the offender. Here, the private information was of the victims. Justice Breyer Well, when you're facing a request under the Freedom of Information Act that requires redaction of exempt information and the disclosure of the balance, they're one and the same in many instances. So the details of the offense in some respects do comply with the interest to out the sex offender for his offenses. The question is, what level of abstraction or generality are we going to apply here? It seems to me there's no higher level of generality or abstraction, which the to a course of conduct that has never been addressed in circuit or in the Supreme Court. Justice Breyer How does the FOIA issue play into this? Can't an officer be, you know, the Supreme Court used words like incompetent, incompetent for following state law, Arkansas FOIA law, when it violates the Constitution? Justice Breyer Well, plainly incompetent. Of course, that has to be separated from negligent because even under this assumed right, the question is whether there was deliberate indifference. Not whether this was negligent under redaction, which we believe is what was alleged in the complaint. Justice Breyer But wouldn't that get to the facts of the case? We're just at the pleading stage. Justice Breyer Well, of course, we have to stick to the pleading stage, Your Honor. I see my time is up, so I'm going to yield my contention. Justice Sotomayor I have one final point, question here. Justice Breyer Yes, Your Honor. Justice Sotomayor The last line in your petition for rehearing in bank, the last clause, calls for us to dismiss the instant case. How can we do that when you didn't petition for rehearing of the denial of dismissal of the state law claims? Justice Breyer I'm sorry, Your Honor. I thought we did, but if we didn't, I think that would be fair. Justice Sotomayor There is nothing but federal law cited in your petition for rehearing. When I read that line, I went back and looked. There is nothing but federal law, and it may be a state statute. How can we dismiss the case when you haven't asked for review of half of the panel decision? Justice Breyer I think that would be fair with respect to the state law claims, Your Honor. Thank you. Roberts Thank you, Mr. Owens. Mr. Kicklack. Mr. Kicklack Thank you, Your Honor. May it please the Court, my name is Tom Kicklack. I represent Cathy O'Kelley and Ernest Cate in this case. I think it's also important, just since I said that, to mention that my colleague, Mr. Owens, represents Rick Hoyt. In other words, two separate entities, two separate governmental    colleague, Mr. Owens, represents Rick Hoyt. I think it's important that they release this document, a redacted police report. And I think, Judge, I think your question is very important that we think about, in this context of qualified immunity, that that was a situation that they were under. The Freedom of Information Act in Arkansas is very, very clear. Unlike the informational right to privacy, it is highly litigated, and there are volumes of case law that command any official that is responding to a Freedom of Information Act request to find out whether the information has any exception in the law, and if so, that exception has to be redacted out of the document, and the document has to be produced. And so that is what two separate entities under these facts attempted to do. And that's what we're here on today, is a Freedom of Information Act request. Recall that the Freedom of Information Act must be construed broadly to meet its purposes. That is well-settled case law in Arkansas. Also, on the face of the act itself, is the command that any exception be narrowly construed. And so if officials find an exception in law that conflicts with the broad, broad command to release under the Freedom of Information Act, that exception must be construed narrowly. And so if you put yourselves in the feet of these two officials, and I have to analyze the specific facts of this case under the Qualified Immunity Standard, they were having to, under a deadline that cannot be moved, respond under the threat of penalty of criminal sanctions, 30 days in jail, plus fines, plus civil sanctions, plus attorney's fees. Can you seek guidance from the courts under Arkansas law on this question? There is no provision in the Freedom of Information Act to seek guidance prior to release, Your Honor. Is there precedent for going to court with a difficult, asking a court for guidance on a difficult exception question? The Freedom of Information Act provides a strict deadline under which these officials, again... Answer the question. I said is there judicial precedent on that? Not that I'm aware of, Your Honor. Not that I'm aware of. Can subdivisions in your state generally ask for declaratory judgments or not? Missouri has law on that. It is Arkansas. I believe a subdivision in the state of Arkansas might have standing to ask for declaratory judgment, Your Honor. Again, at this point now, we're talking about the very, you know, sort of minute details of what does the Freedom of Information Act in Arkansas require. Counsel, suppose that, and I was going to get to this with other counsel, but he ran out of time, suppose that we had a case on point, absolutely on point, on all fours, almost identical, just involving different parties. And you stood up there and made the exact same argument that Arkansas FOIA law required these folks to release it. What would be the outcome in this case? Would you be up here arguing because of Arkansas FOIA law that the law is not clearly established? What I'd be arguing is first, Your Honor, that under your precedent, Lyons, we would have to examine the specific facts. That's not the hypothetical. The hypothetical is we've got a directly on point case. Directly on point, all fours. We're just assuming that. I'm trying to figure out how FOIA law fits in. Would you then be up here saying, well, it's uncertain because of FOIA law? Or would your clients lose? Would it be clearly established? Your Honor, under your hypothetical, that the Eighth Circuit had a case directly on point, that is a case in which the Freedom of Information Act request was made of a police report. The officials produced it, redacted. That is, took out every name and took out gender and took out all identifying pronouns. That the subjects in the report had fans globally that were so industrious and such good sleuths that they were able to measure the redactions to determine what names would fit into that redacted space? I think you're saying that our precedent doesn't matter. That FOIA law would trump our precedent. I want to leave time for other questions, but I think that's what you're saying here. Your Honor, I think that if there was an exact case in your hypothetical that met that, I believe that qualified immunity would be more questionable in that case than it is in this case where it is almost certain that I think these officials are entitled to it. Counsel, what's your view of the interaction of the Child Maltreatment Act with FOIA in Arkansas? Your Honor, I believe, I'm sorry, Chief Judge, I believe that the interaction is clearly set forth in the many, many cases that interpret the Freedom of Information Act in Arkansas. We have to compare that, of course, to the fact that there are no cases whatsoever under the CMA, the Child Maltreatment Act. And so if you had to determine in this court what the interaction would be, first of all, since again there's no case law on point, these officials would be left with no guiding law to direct them. What is unclear or ambiguous about that act when it just clearly says that information and data and related to investigations of child abuse are not subject to FOIA disclosure? That is an excellent question, Chief Judge. And so when we talk about the Child Maltreatment Act, I think the first thing to remember is this. It is not an absolute prohibition to release of information. The Child Maltreatment Act contains within itself exceptions where information can be produced when the state interest requires it, such as a prosecution. Of course, the official will have to release the information in their file to a prosecutor. And so the CMA itself contains exceptions. And so the absolute nature of it, which is, I think, advanced by opposing counsel, does not exist. Further, if an official in the place of these officials, say, tried to read the CMA, they would find that a strict adherence to it would make an absolute absurd result. And that's because of this. It says, any data or documents that are created, and I'm paraphrasing slightly, but the important words are, collected or compiled on behalf of DHS or any other entity authorized under this chapter, which would be the law, shall not be subject to disclose. There is no modifier that says any information about the violation, any information about the investigation. It's any information. And so a simple and plain reading of this act means every document in every city and every county in Arkansas is secret and cannot be released. This all would have to be fixed. But as of the time when this release was made, the release of the redacted report was made, this law is in the state that it is now, which is impossible to, for any official, to really make sense of. And so the interplay, Your Honor, between the Freedom of Information Act, which requires a broad, broad, broad interpretation and encourages release with redaction against the CMA, which is murky at best, would result in, I believe, what happened in this case. So instead of seeking guidance from legal counsel, the defendants instead released the information to a tabloid late at night that was represented by a close friend of Defendant O'Kelly. The release was made, Your Honor, under the deadline. Under the deadline. I think that's what the allegations are in the complaint, that the lawyer seeking the release was being strict about the deadline. Also, Your Honor, to be fair, one of the defendants, my client, Ernest Cate, is a lawyer, is a city attorney. And so I'd like to remain a little time for rebuttal if there are no other questions right now. I see none. Thank you, Mr. Cate. Thank you, Chief Justice. Mr. Larson? Thank you, Your Honors. May it please the Court, it's a real privilege to be here this morning. Mr. Larson, if you could raise your podium just a little bit there, I think we might hear you better. There's a button on the side of the podium there if you can raise it. Okay, thank you. Just a little bit. Thank you, Your Honor. So it's a real privilege to be here before Your Honors this morning and I'll try to go to the issues that have been raised so far in this hearing. It's quite clear, we believe, that there is a constitutional right and at least within the context... Counsel, isn't the right word assumed? The Supreme Court's word is assumed. Isn't that the word we should use? It's this right to informational privacy that has been interpreted over 25 years or almost 25 years ago by this Court in Eagle. Well, don't dodge the question. The United States Supreme Court's word is assumed, right? In two or three cases. It says Whalen assumes that. We're going to assume that. The precise parameters, what I will concede is murky, what I will concede is not clearly established perhaps, is where the boundaries end. Wait a minute. Has this Court in Bank ever said anything other than assumed? I don't believe so. Eagle v. Morgan was not a... ...binding on the in-bank court. Well, Your Honor, this is an unusual case. This should be something which should be clear to any police officer, any government official, that you don't do this. The laws of Arkansas are clear. The voice of this Court is clear. The voice of the Supreme Court, I would submit, is clear. That there is this informational right... Tell me where it's clear. Tell me where the Supreme Court's been clear on it. I agree that we've got some case law, panel case law. But tell me where the Supreme Court has clearly said, this right exists and here's what it means. Your Honor, I think that the circuits throughout this country have clearly understood and interpreted what the Supreme Court has offered. I have to concede that there is no on-point Supreme Court case. I grant that. But that is not the only basis, as this Court knows, for establishing a constitutional right. There are many, many cases throughout this country which have recognized that what we're talking about here... I mean, this goes to the core of confidential information. We're talking about minors being sexually abused. Any human being, certainly any government official, should know, frankly, without a direct on-point Supreme Court case, that that is wrong and that's a violation. Wrong doesn't mean that it's constitutionally protected. I mean, that's the problem I'm having. You're saying this is a sui generis case. This is really horrible. And therefore, we should find a constitutional violation. No, I'm not. That's not what I'm suggesting. When I say wrong, I'm referring to it's constitutionally wrong. This Court has characterized this right to confidentiality and I'm referring to the Eagle case here. And in a case where they did not, they granted qualified immunity or did not extend it. And they said there was just two very limited circumstances where it's clearly defined. And both happen to apply to this case. You couldn't have come up with a law school exam fact pattern better than the facts in this case to fall squarely within Eagle. And to violate this person's constitutional right of privacy, and I'm reading from Eagle and I know the Court is familiar with this, the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, which is exactly what happened here, or a flagrant breach of a pledge of confidentiality, which was instrumental in obtaining the personal information, which is also exactly what we allege to have happened here. Is that a holding or a dicta? Oh, I think that goes to the core of the Court's holding. Because it was basically by setting up those parameters that the Court was basically able to exclude the criminal history of Mr. Eagle that was disclosed and finding that it falls outside of those parameters. And again, the boundary, there may be some cases that are in the middle. This is not one of those cases. What if the officer thought Justice Scalia's view is going to prevail? The Supreme Court has never decided whether there's a constitutional right and our view is there isn't one. Well, I think the view of the Court, of this Court of the Circuit, is there is such a right. What case so holds? Yes, implicit in the sentence, to violate a person's constitutional right of privacy in the contents of a right to informational privacy. Yes, it is assuming that. And it is clearly established. And it's not just, you know... Well, I'm asking you, what case holds that there is a substantive due process right to informational privacy? In this circuit, I think the best case that I have to offer Your Honor is the Eagle case. And Eagle held that there was no constitutional violation. Is that right? Well, as applied in that particular case. But it's certainly implicit in Eagle's ruling is that that constitutional right exists. And I think that given not only the decision in the Eighth Circuit, not only the decisions throughout this country, but the statutory laws in the state of Arkansas, which clearly recognize this right as well. I mean, think how quickly, after the city and the county released this information, that the state of Arkansas found that this has to be redacted. This is something which was not a hard or close call. This information should never have gotten out, particularly for the insidious reasons, frankly, that we allege. What if the redactions had been affected? Was the Constitution still violated? If the redactions had been affected? Affected? I can certainly imagine a hypothetical situation where redactions would have been so prevalent that no information would have gone out that would have implicated... That was my question. Is there still a constitutional violation? If the tabloid couldn't have figured out what they... When you're disclosing the information which allowed people to figure out a tabloid to be able to invade the privacy of these children who had been abused, that's a violation. If the disclosure would have been made in such a way that no tabloid could have done that, then perhaps there would not be a constitutional violation. But that's not what we have here. The FOIA issue... Let's just further on that. Again, this is so far in the center of the field. I think, Judge Carroll, you indicated what would qualify if not this one? And I think that's an important question to ask. And I think that is almost self-evident. And it was clear to the district court. It was clear to the panel in this case. You know, treating the allegations as true as this court must. I mean, we've also got to keep in mind the stage, the procedural stage that we're at here. The county and the city are going to have an opportunity to make these arguments again at summary judgment after we know the evidence. But we clearly allege, and both courts that have considered this matter have clearly understood that we are alleging deliberate indifference. In fact, I would suggest what we're alleging is something beyond deliberate indifference that this was intentional. But in any event, there is clearly sufficient allegations here. On the FOIA issue... Sir, Mr. Larson, would you agree that it's an open question for the en banc court whether the right to informational privacy exists at all? In other words, there's nothing in Supreme Court precedent that would preclude us from coming out one way or the other on that? I don't have an on-point Supreme Court case. So obviously I must answer that somewhat in the affirmative that there's nothing that prevents the court from doing that. I think the persuasive authority that is out there, the clearly established persuasive authority that is out there, and the rulings of this court previously and the Supreme Court's decision in Wayland all clearly point to the establishment of that right. I... Well, I'm wondering if it's really an open question where there's no binding authority... Is it an open question? I thought you just conceded it is. I guess, Your Honor, when I consider everything, when I consider the Supreme Court decision, when I consider this court's decision, when I consider, I'm sorry if I'm speaking too quickly, the state law of Arkansas and the circumstances of this case, I don't think it's an open question in this case. It's clearly established law in this circuit. Could this court reverse that law? I think that would be improper in light of the laws that exist right now. The notice to a reasonable officer... Isn't the en banc court always free to disagree with  What's improper about that? I'm not in the habit of telling an en banc panel that they can't... As a matter of procedure, isn't that settled procedure that an en banc court because it has authority to decide questions... I would never tell an en banc court that they can't do something, Your Honor. All right. But it would be a mistake. It would be wrong. It would be constitutionally infirm for this en banc court to do so in light of the Supreme Court's instruction on this. Again, I concede that there's not... What instruction are you referring to? I'm referring to the Whelan case and how that case has been interpreted by Eagle. There's no question, Your Honor, that there is a constitutional right in this country to privacy. We're entering the third decade of the 21st century. This is not novel law. This is nothing new. Well, then why didn't the Supreme Court say so in the Nelson case, if it's so obvious? Why did they go out of their way to say we've never decided it and we're not deciding now? I think that the They didn't say we're not deciding outside boundaries. They said we're not deciding whether the right exists. Isn't that right? In the context of that case, there was language to that effect. But I think that if you consider all of the court's privacy law and how that's been interpreted, not only by the Supreme Court, but by circuits across this country, no reasonable person can suggest that that right to privacy, and particularly a right to confidentiality, does not exist. Especially when we're talking about sexual relations, particularly when we're talking about abuse of sexual relations of a minor. If that does not exist, then we have no right to privacy. Does it matter that it appears that based on the Nelson case, many circuits maybe misinterpreted Whelan and Nixon, at least based on what the Supreme Court is telling us now? Does that affect? I don't think so. I think this court in its interpretation in EGLE correctly interpreted it and I think that's the law of the circuit. What's a correct interpretation if in fact the Supreme Court has later said we're assuming without deciding just as we did in Whelan and Nixon, and the circuits had been taking Whelan and Nixon as actually asserting or establishing that right? I think we have the laws that exist right now. I don't think the court has indicated I don't think they've retreated from this. They have not gone perhaps as far as they probably will at some point in time, but we have certainly it and this circuit and the other circuits have clearly gone far enough to encompass the conduct that is at issue here. This is a, you know, our rights in this country, our constitution of this country is never finally decided. That's why we have a Supreme Court. That's why we have courts of appeal. But what we have decided up to this point is that the type of right implicated in this case is clearly protected and any reasonable officer any reasonable officer would know that. We protect police officers when they make splits. Have you found a qualified immunity case holding that an alleged violation of a right that may exist but has never been held to have been violated was the violation of a clearly established right? What we did cite, Your Honor perhaps not that far, but the De La Rosa v. White case in this circuit stands for the proposition that there need not be a specific case on point for law to be clearly established. Obvious example of that but that's that's not on this issue. Well, I think what that leads to is the point that, and that's why I kept referring to the reasonable officer because this court has also held that all it requires is a court for this court to find that a reasonable official would understand that what he was doing violates the right. And the right is articulated by this court. It is clearly established. It's codified It's not. I would insist, Your Honor. You keep coming back to what we have gotten you to admit does not exist. A controlling precedent that this right is clear that this right exists. Well, I do believe that EGLE is a controlling precedent in this circuit. I respectfully submit that in this circuit under the law here particularly as codified in the Arkansas law, there exists exactly that clearly established law that clearly established right. And I was just going to mention on the FOIA point unless there's any other questions on that that certainly the Child Maltreatment Act is a clear exemption to FOIA's broad disclosure rules that is codified or codified in the Arkansas laws and in addition to which Is it true there are no cases under that law? There's no cases, Your Honor, but I would point the court to the opinion of the Attorney General of Arkansas which was came out in 2005. In Arkansas is it like Missouri? It's just treated like the opinion of any other attorney? You treat it as a... That's a black letter law in Arkansas too, isn't it? I've seen Arkansas cases. It's clearly understood that confidentiality rules are an exemption and exception to the FOIA requirements. This was a race to judge, but this wasn't a split second decision that an officer had to make in deciding a life and death situation. This was a FOIA request. Very important. All that. But so is the law, the clear law of Arkansas which requires confidences particularly of this nature to be kept. And the failure of the officials and officers in question not to make any effort at all to inquire or reflect or follow up. I think there's a clear indication that the allegations that we're making in our complaint are accurate. I want to go back to Judge Benton's question because I don't believe it was answered. And the law is various in the states in our circuit. For example in North Dakota, the opinions of the Attorney General have force of law unless overturned by a court of record. In Arkansas, do the Attorney General's opinions have force of law or are they merely the opinion of a person learned in the law? I don't know the answer to that question. I'm sorry. I would put it in the category at a minimum of being persuasive authority or advisory opinion. It may have even greater import than I'm aware. But at a minimum there is not only the advisory opinion but there's the law interpreting that advisory opinion. And that's the Arkansas Annotated Code Section 16-90-1104 which expressly prohibits law enforcement from releasing information that directly or indirectly identifies the victim of sex offense with exceptions that are inapplicable here. I don't think you even need frankly an Attorney General opinion to interpret that. Now there is one that does and it makes it clear that that's an exemption from FOIA. But again this is all well known to any reasonable officer. Counsel, could you address the status of your state law claims in light of Judge Loken's comments? I think the state law claims factor into this in a couple of ways. But with respect to Judge Loken's point, I believe that they are entirely separate and apart from the Section 1983 claims to which qualified immunity is the issue. I think they're fully alive. And frankly even if there was a dismissal of the claims here, I would seek that they be made without prejudice. We're at the pleading stage. This is a 12B motion. And if there's anyways that's where we are on that. Unless there's anything further from the court I appreciate your time. Thank you. Thank you Mr. Larson. Mr. Owens. Thank you, your honors. I think that redaction is an important fact here. Counsel asserted that there was no effort made but the complaint concedes that the identities of these ladies were redacted from the complaint. And so what he conceded in his argument just now is that the FOIA requires redaction and disclosure of the balance. So redaction of exempt information. Now what he said and the argument they've made throughout is that there ought to be some sort of amateur internet detective exception. That somehow if the redaction is not good enough or negligent enough that somebody on the internet can figure out what the redactions were that somehow that violates the constitution. There's simply no case law anywhere that stands for that. Counsel I wanted to ask you, you didn't focus on the first part of qualified immunity in your petition for re-hearing and we have case law that suggests that you need to do so. Which is the existence of the constitutional right. You focused on it quite a bit today and there was some in the briefing. Why should we address that first issue given that the petition for re-hearing doesn't focus on it? And feel free to disagree with me on that as well if I'm misreading your petition. Well certainly I think we did address it. Focus sometimes is high to the beholder but I certainly think we addressed it. And I think it's a question, a threshold question this court must answer. There's no way for a right to be violated much less clearly established if it doesn't exist in the first instance. If there are no further questions, thank you your honor. Thank you Mr. Owens. Thank you gentlemen for your presence and the argument you provided to the court. The briefing which has been submitted will take the case under advisement under decision as prompt as possible. Thank you. I believe that concludes the business of the Inbank Court this morning. Yes your honor. That court will be in recess until further call.